**TEXAS COMPANY, Libelant,**

v.

**GRIZZAFFI DREDGING CO., Inc., and the Barge Kentucky, her tackle, apparel, furniture, etc., Respondents.**

No. 3832.

United States District Court
E. D. Louisiana,
New Orleans Division.

May 5, 1961.

Terriberry, Rault, Carroll, Martinez & Yancey, Edward S. Bagley, New Orleans, La., for libelant.

Faris, Leake & Emmett, New Orleans, La., J. Y. Gilmore, Jr., Morgan City, La., for respondents.

WRIGHT, District Judge.

At 8:10 a. m. on April 1, 1958, the tug Houma[1] brought her tow, barge Texaco 447,[2] in collision with the submerged section of the barge Kentucky[3] in the Vermillion River about 200 feet north of the Perry Bridge at Perry, Louisiana. At the time of the collision a salvage operation on the barge Kentucky was underway.[4]

While the Houma was upbound in the draw of the bridge, her captain, F. J. Dobbertin, noted the approaching tug Morgan City downbound pulling a tow of four barges. Since the draw was only 60 feet wide, the Morgan City had jack-knifed to starboard around her barges to stop their forward movement. Undoubtedly, in this maneuver the Morgan City spread her tow over substantially more than her half of the narrow navigable channel in the river. At the point where the Morgan City jackknifed, she and her tow were favoring the west or right descending bank of the river opposite from the location of the Kentucky on the right ascending bank.

The Kentucky was marked by a buoy. The Houma, probably paying more attention to the Morgan City and her tow than to the buoy, apparently ran over the buoy and brought her loaded barge in contact with the submerged end of the Kentucky. At this time the salvors of the Kentucky had approximately 25 feet of that 108-foot vessel entirely out of the water on the bank, with her remaining 83 feet partially submerged at a 45° angle downstream from the bank.

The issue in the case is the location of the buoy at the time of the collision.[5] The captain of the Houma maintains that, though he was watching the Mor-

gan City and her tow, he also saw the buoy, and that no part of his tug or tow came within 15 feet thereof. The bargeman on the Texaco 447 agreed that the barge did not come closer than 15 feet to the buoy at any time, including the moment of collision, of which he was aware, but of which the captain of the Houma was not.

Two salvors of the vessel told a completely different story, in which, incidentally, they were corroborated substantially by the bridge tender. All three of these witnesses testified that the barge of the Houma had, in fact, run down the buoy and had thus come into contact with the Kentucky. These witnesses were in turn, to some extent at least, corroborated by the buoy tender employed by the United States Engineers, who had undertaken the responsibility of keeping the wreck properly marked. The buoy tender was not present at the time of the collision, but he testified that on March 31, 1958, on his inspection the buoy was properly anchored and the light thereon was in place, but that on April 1, 1958, after the collision, while the buoy was still in the same place, the light had been knocked out.

The testimony is obviously irreconcilable. Under the circumstances it certainly cannot be said with assurance that the Texaco 447 did or did not run down the buoy. The most that can be said is that, while the two Texaco witnesses testified that the Texaco 447 passed clear of the buoy, the two salvors, supported by the bridge tender, testified to just the opposite. This being the state of the evidence, it would be difficult indeed to find that libelant here has successfully undertaken its burden of proof.

Decree for respondents.

1. The Houma is a diesel tug 85 feet in length, 22 feet in width, with a draft of 9 feet.

2. The Texaco 447 is a steel tank barge 205 feet long and 40 feet wide. At the time it was drawing 5 feet 6 inches forward and 8 feet 6 inches aft.

3. The Kentucky was a steel tank barge 108 feet long and 35 feet wide.

4. The salvors are impleaded herein by respondent Grizzaffi, owner of the Kentucky.

5. 33 U.S.C.A. § 409 places on the owner of a sunken vessel the non-delegable duty to mark it with a buoy by day and a lighted lantern by night. The marker should be channelward of, but near to, the wreck. 33 C.F.R. 62.25-40.